## McINTOSH *v.* CHICAGO, M. & ST. P. RY. Co.

(*Circuit Court, D. Minnesota.* November 14, 1888.)

RAILROAD COMPANIES—INJURIES AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—
PROVINCE OF JURY.

> Deceased was driving a heavily loaded wagon on a street in a large city, crossed at its intersection with another street by four tracks of defendant's road. A gate was usually lowered across the street, controlled by men in an observation tower, who, being unable to see by reason of the fog, were at the time acting as flag-men, the gate being raised. Several teams were in waiting for a passing freight train, and when the track was clear they attempted to cross, deceased being last. As his horses were on the rails an alarm was given of a passenger train approaching, and two men on the wagon with deceased jumped off safely. Deceased struck his horses to urge them forward, the wagon was dashed against the curb-stone, the foot-board upon which deceased's feet rested broke, he fell under the wagon wheels, and was killed; the horses escaping. It was uncertain whether deceased attempted to jump, and springing from the foot-board broke it. There was evidence that it was defective, but none that deceased knew it, and one of the other men who was heavier than deceased sprang off of it without its breaking. *Held*, no evidence of contributory negligence in the use of the defective foot-board, to require the submission of the question to the jury.

At Law." On motion for new trial.

Action by James W. McIntosh, administrator of William Fry, deceased, against the Chicago, Milwaukee & St. Paul Railway Campany, for negligently causing intestate's death. Verdict for plaintiff, and defendant moves for a new trial.

*Hunt & Wilkinson, Howard & Richardson,* and *J. H. Randall,* for plaintiff.

*Flandrau, Squires & Cutcheon,* for defendant.

SHIRAS, J. On the 31st day of October, 1887, William Fry was engaged in the business of teaming in the city of Minneapolis, and on the morning of that day he drove his wagon and team along Tenth avenue, to the point where the same crosses the line of defendant's railway; it being his intent to pass over the railway track. The wagon was heavily loaded with ashes and garbage; there being on it two men besides Fry, who was driving the team. At the point of intersection of Tenth avenue and the railway track, which is likewise the point of intersection of Third street, the railway company had erected gates worked by a pneumatic pump in a tower, which were ordinarily lowered across the streets when a train was approaching. On the morning in question a fog had prevailed, so that the men could not from the tower keep watch of the track, and they had left the gates upraised, and had been acting as flagmen upon the ground. A short-line train from St. Paul was due at the crossing about the time Fry drove down Tenth avenue, and there was also a freight train at or on the crossing; so that all teams approaching in either direction on Tenth avenue or Third street were compelled to halt. The freight train was being moved out of the way, and as soon as it cleared the crossing the way was left open for the passage of the teams,

as the gates were not closed. One of the two men at the crossing had gone into the tower for the purpose of pumping air into the cylinder of the pneumatic pump, and there was left, therefore, to keep guard at the double crossing, only one man. As soon as the passage was left clear the teams that were waiting, including that driven by Fry, started across the track. The short-line train was now approaching the crossing, and the flag-man made some effort to warn the persons of the danger, but owing to the fact that there were practically four crossings to watch and warn, with a large number of teams approaching, he was unable to give any effective signals, and the teams started over the track. The wagon driven by Fry, being heavily laden, was the last to reach the railway tracks, and just as the horses were passing upon the line of rails on which the coming train was approaching, the man sitting by Fry saw the same, gave the alarm, and sprang from the wagon. At the same instant the flag-man rushed forward, exclaiming: "Get out of here; get out of here." Fry was seated on a spring seat in the front of the wagon, with his feet resting on a foot-board attached to the front end of the wagon box. When the alarm was given him, he rose up, and, as some of the witnesses testify, he struck the horses with the reins to urge them forward. At that instant he fell between the horses and the wagon wheels, and, the horses starting forward at a rapid pace, the wheels of the wagon passed over Fry, causing injuries which resulted in his death within 24 hours. The flag-man pulled the body from the track, so that it was not touched by the locomotive. By the running away of the horses, the wagon was carried clear of the track, and it escaped an actual collision with the train.

Upon the trial the question was submitted to the jury whether the defendant company had been negligent in not having a proper guard kept at the crossing, and whether Fry had been himself guilty of negligence in attempting to drive across the railway tracks. The jury, by their verdict, found negligence on part of the company, and freedom therefrom on the part of Fry, and these findings are entirely justified by the evidence. The verdict being in favor of the plaintiff, the defendant now moves for a new trial on the ground that "the court in its charge withdrew from the consideration of the jury the question as to whether the deceased, Fry, was guilty of contributory negligence in rising and putting his weight upon the foot-board of his wagon when the same was in a defective condition, and by reason of such defect broke under his weight and precipitated him under the heels of his horses." The evidence showed that when Fry was warned of the danger caused by the coming train, he rose upon his feet on the foot-board; but whether he did so for the purpose of trying to escape by jumping from the wagon, or for the purpose of whipping up his horses, was left uncertain. It was also in dispute whether the foot-board broke beneath his weight, or whether his foot slipped, and caused his fall. It was with more especial reference to the first of these points that the part of the charge excepted to had reference. The jury were instructed that it made no difference whether Fry's purpose was to attempt to escape by jumping from the wagon, leav-

ing it to its fate, or to urge the horses forward, and so attempt to clear the track; that if the company by its negligence had placed Fry in a position of danger, it would be responsible for the consequences; and that it did not lie with the company to say that he was in fault because he attempted to jump from the wagon, or because he attempted to urge the horses forward. But granting that the effect of the charge in this particular was to eliminate the question of contributory negligence from the case, as is claimed by defendant's counsel, was it reversible error so to do? The point made by the defendant is that it should have been left with the jury to determine whether Fry was guilty of contributory negligence in rising and putting his weight upon the foot-board of the wagon, when the same was in a defective condition, by reason of which defect it broke under his weight. This embraces three propositions, to-wit: That the jury would have been justified in finding that the foot-board was in a defective condition; that it did break under his weight, and that it was in such a defective condition within Fry's knowledge, that he was guilty of negligence in rising on the same when the sudden emergency came upon him. There was some evidence by one witness, who examined the foot-board after the accident, showing that there was an old fracture in the foot-board. Reliance is placed upon certain statements said to have been made by the witness Thornton, who was one of the men upon the wagon, to the effect that if the foot-board had been sound the accident would not have happened, and that he had told Fry to have the foot-board repaired. Thornton denied making any such statements. If Thornton did in fact make these statements, they are not competent evidence against the plaintiff. Thornton has no interest in the case, and the statements, if made at all, were made after the accident had occured; were no part of the *res gestæ;* and if a new trial were had these statements could not properly be put in evidence. There was direct and positive evidence introduced by plaintiff tending to show that the breaking of the foot-board was caused by the team running the wagon against the curb-stone after it had passed over the railway track. So, also, there is no direct evidence on the subject of Fry's knowledge of the defective condition of the foot-board, if we assume that it was defective.

. Admitting, however, that there was some evidence tending to show that the foot-board was in bad order, and that it broke when Fry's weight came upon it, and thereby precipitated him beneath the wheels of the wagon, would the jury have been justified in finding that Fry was guilty of negligence in rising on the foot-board in his effort to escape from the on-coming train? The testimony of Thornton and James, the two men who were upon the wagon with Fry when the accident happened, was to the effect that the wagon had been in daily use since the 5th of July preceding the accident; that there had not been any visible defect in the foot-board; that the foot-board was used daily by them, and it had never given way; and that Thornton, who was sitting by Fry when they came down upon the railway track, jumped from the wagon in making his escape, using the foot-board to spring from, and it did not give way beneath his weight. Under such circumstances would the jury have been

justified in finding that Fry was guilty of contributory negligence in "rising and putting his weight upon the foot-board" in his effort to escape from the coming train? The uncontradicted evidence shows that the foot-board had been in daily use for weeks before the accident, and at the very moment of the accident Thornton, who was a heavier man than Fry, had before his very eyes placed his weight upon the foot-board, and used the same as a means of support in springing from the wagon. If it would—as it did—support Thornton's weight, why was not Fry justified in acting upon the belief that it would equally support his weight? The evidence shows without dispute that the wagon-bed was full of ashes, and the seat was so placed that the feet of the men in the seat rested on this foot-board. When the necessity arose of attempting to escape from the sudden danger caused by the approach of the train, what was more natural than for the men to throw their weight upon the foot-board? Thornton, being the first to notice the danger, rose upon the foot-board, and by jumping to the ground he escaped injury. Fry, however, was in charge of the team, and probably made the effort to urge the horses forward, and for that purpose struck the horses with the reins, and in doing so threw his weight upon the foot-board, and in doing so defendant claims he was guilty of negligence defeating the right of recovery. I wholly fail to see any fair view of the evidence that would have justified the jury in finding that Fry was guilty of negligence in so doing. A finding to that effect would have been without support in the evidence, and had the jury upon that ground found for the defendant, it would have been the duty of the court to set aside the finding.

There is nothing proved in the case that would have justified the jury in finding that Fry, in the exercise of ordinary care, should have foreseen that the probable result of his putting his weight upon the foot-board would be that it would give way beneath him. If, in the exercise of ordinary care, he was not bound to anticipate such a result, how can it be said that the fact that he did put his weight upon the foot-board was negligence? The fact, if it be one, that the foot-board gave way beneath Fry does not show that Fry was negligent in placing his weight thereon. To show negligence it would have to appear that the condition of the foot-board was such that Fry, when he was about to place his weight thereon, knew or should have known that it would probably give way beneath him. The evidence wholly fails to show such a state of facts as would justify a jury in finding that Fry knew or ought to have known that he could not make the use that he did of the foot-board. Under such circumstances it was not only not error to withdraw the question of contributory negligence in the particular named from the consideration of the jury, but it would have been error to have submitted the question to them, for the reason that the evidence submitted did not present the question. The motion for a new trial is therefore overruled.